Not for Publication

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| DARSHANA SHAH, | |
| Plaintiff, | Civil Action No.: 22-5945 (ES) (LDW) |
| v. | |
| ALEJANDRO MAYORKAS, | OPINION |
| Defendant. | |

**SALAS, DISTRICT JUDGE**

Before the Court is defendant Alejandro Mayorkas's ("Defendant") motion to dismiss plaintiff Darshana Shah's ("Plaintiff") second amended complaint (D.E. 55 ("Second Amended Complaint" or "SAC"). (D.E. No. 61 ("Mot.")). Having considered the parties' submissions, and deciding this matter without oral argument (*see* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b)), for the reasons set forth below, the Court **GRANTS** Defendant's motion to dismiss the Second Amended Complaint.

**I.  BACKGROUND**[1]

**A.  Events Prior to 2016**

From 2002 until October 2014, Plaintiff, a 55-year-old Indian woman, worked for the United States Transportation Security Administration ("TSA") as a Program Analyst in Metrics. (SAC ¶¶ 8, 19, 21). In 2010 and 2012, Plaintiff filed two complaints with the Equal Employment

---

[1] The Court summarizes the facts as alleged in the Second Amended Complaint and accepts them as true for purposes of Defendant's motion to dismiss.

Opportunity Commission ("EEOC") alleging discrimination against her supervisor. (*Id.* ¶ 22). The Second Amended Complaint provides no additional information about these EEOC complaints.

Between June and October 2014, Plaintiff allegedly (i) had her performance rating lowered; (ii) was directed to "demote herself from the 'I' Band to the 'H' Band" for Program Analyst Metrics; (iii) was permitted to apply for a new 'I' Band level position as a Scheduling Operations Officer, which she attained; (iv) was threatened by a manager not to accept the new position; and (v) complained to a supervisor about the threat. (*Id.* ¶¶ 23, 24, 27).

Plaintiff ultimately started working as a Scheduling Operations Officer, which involved scheduling TSA agents to work at security checkpoints at Newark Liberty International Airport. (*Id.* ¶ 20). She has held this position since October 2014. (*Id.*).

  **B.**  **Events of 2016**

In March 2016, Plaintiff alleges management gradually removed her from "an important project," and her project duties were ultimately reassigned to a white male. (*Id.* ¶ 31).

Then, on April 15, 2016, feeling "berated and rushed," Plaintiff emailed an Excel document with sensitive information to 1,075 TSA employees. (*Id.* ¶¶ 32, 44, 54). The Excel document contained the birthdates and Social Security Numbers ("SSNs") of over 1,000 TSA employees. (*Id.* ¶ 33). To create the Excel document, Plaintiff used a roster list provided to her by Human Resources that contained employees' birthdates and SSNs. (*Id.* ¶ 33). Without realizing the roster list contained personal information, Plaintiff hid the roster list within her Excel document using worksheet protection features—but did not delete the roster list. (*Id.* ¶ 35, 48). Plaintiff later learned the "worksheet protection features had been disabled." (*Id.* ¶ 47). As a result, even though Plaintiff took an additional step to password-protect the Excel document before sending it,

"employees with the password for the spreadsheet, who opened it on personal devices with applications other than Microsoft Excel, could view the encrypted hidden [sensitive information]." (*Id.* ¶¶ 36, 47).

On April 18, 2016, "Plaintiff was reassigned to a customer service position pending an investigation into the dissemination of employees' personal information." (*Id.* ¶ 56). Her supervisor in this temporary role was the same person against whom she had previously filed EEOC complaints. (*Id.* ¶ 57). Following an investigation into the security breach, the Assistant Federal Security Director issued Plaintiff a letter of guidance concerning her performance as well as a Notice of Proposed Suspension. (*Id.* ¶¶ 55, 59). Then, on October 17, 2016, Plaintiff was suspended for three days for her allegedly improper handling of sensitive security information. (*Id.* ¶ 58, 60). In November 2016, Plaintiff's performance rating was lowered from "Achieved Excellence" to "Exceeds Expectations." (*Id.* ¶ 62). Plaintiff alleges she was "the only person of color and the only woman in the chain of events that TSA brought charges against," and that no one else was reprimanded for the security breach, including the employees who viewed the spreadsheet and hidden information on their personal devices or the Human Resources employees who sent Plaintiff the roster list with sensitive employee information. (*Id.* ¶ 55).

The Second Amended Complaint alleges a few additional facts regarding the security breach and its aftermath. (*Compare* D.E. 15 ("First Amended Complaint" or "FAC") ¶ 55, *with* SAC ¶ 55).[2] First, Plaintiff maintains "[u]pon information and belief" that while several people received or "handled" the email Plaintiff circulated—all of whom were subject to the same TSA policy governing the handling of sensitive information—Plaintiff was the only person disciplined. (SAC ¶ 55). Second, "all of these other persons were under the supervisory authority, with respect

---

[2] Other than the additional allegations set forth below, the Second Amended Complaint is substantively identical to the First Amended Complaint.

3

to security issues, of Tony Cubilette, the Assistant Federal Security Director who issued the [] Notice of Proposed Suspension and Christopher Murgia, the Deputy Federal Security Director, who issued the Suspension Decision to the Plaintiff." (*Id.*). Third, while Plaintiff's job duties "may have been different than these other persons, each person was subject to the same rule [on handling sensitive information]." (*Id.*). Fourth, in light of the above, Plaintiff believes the TSA "singled [her] out" and applied its policy unequally in a discriminatory manner. (*Id.*).

On August 29, 2016, Plaintiff filed an EEOC complaint (the "2016 EEOC Complaint") alleging that the TSA "discriminated against her and subjected her to a hostile work environment on the bases of race (Asian), national origin (Indian), sex (female), age (55), and in reprisal for prior protected EEO activity." (*Id.* ¶ 8). The 2016 EEOC Complaint arose from the same six events in 2016 alleged in the Second Amended Complaint: (i) Plaintiff's mass dissemination of employees' birthdates and SSNs because she felt "berated and rushed"; (ii) Plaintiff's temporary reassignment to a customer service position pending investigation into the alleged security breach; (iii) Plaintiff temporarily reporting to a supervisor she had complained about previously; (iv) Plaintiff's receipt of a letter of guidance; (v) Plaintiff's three-day suspension; and (vi) the lowering of Plaintiff's performance rating. (D.E. No. 25 ("Juneau Declaration" or "Juneau Decl."), Ex. A at 3–10).³ An EEOC Administrative Judge granted summary judgment in favor of the TSA, which was affirmed on appeal. (*Id.*).

---

³     All pin citations to Docket Entry Number 25 are to the page numbers automatically generated by the Court's CM/ECF System. Exhibit A to the Juneau Declaration is the July 12, 2022 EEOC Decision affirming the Administrative Judge's grant of summary judgment in favor of the TSA with respect to Plaintiff's 2016 EEOC Complaint. (Juneau Decl. at 3–10). Exhibit C to the Juneau Declaration is a 2017 EEOC Complaint filed by Plaintiff. (*Id.* at 16–22). The Court may consider these exhibits in assessing Defendant's motion to dismiss because: the July 12, 2022 EEOC Decision and 2017 EEOC Complaint are mentioned explicitly and incorporated by reference in the Second Amended Complaint (SAC ¶¶ 13, 14); their authenticity is undisputed; and Plaintiff's claims arise from the EEOC proceedings. *See Ruddy v. U.S. Postal Serv.*, 455 F. App'x 279, 283 (3d Cir. 2011) (noting that the district court may consider EEOC file in deciding a motion to dismiss employment discrimination claims).

### C. Events of 2017

On February 14, 2017, Plaintiff met with Terminal B manager, Mr. O'Hanlon, to review staffing schedules. (SAC ¶¶ 69, 70). Mr. O'Hanlon "directed his feedback" at this "meeting to [Plaintiff's] white, male subordinate," rather than to Plaintiff, subsequently emailed Plaintiff "a lengthy list of changes," and subjected Plaintiff to two hours-long meetings to further discuss staffing schedules. (*Id.* ¶¶ 64, 66, 73–75). On February 26, 2017, Plaintiff emailed Mr. O'Hanlon and her supervisor stating that "she felt Mr. O'Hanlon's extensive change requests were creating a hostile work environment." (*Id.* ¶ 75). Plaintiff then filed an EEOC complaint in July 2017 (the "2017 EEOC Complaint"), again alleging that Mr. O'Hanlon's change requests created a hostile work environment, but never received a Final Agency Decision with respect to her complaint. (*Id.* ¶¶ 14–15, 73; Juneau Decl., Ex. C at 16–2).

### D. Procedural History

Plaintiff initiated this action *pro se* on October 7, 2022. (D.E. No. 1). Defendant never responded to the initial complaint and Plaintiff subsequently obtained counsel. (D.E. No. 5). On April 19, 2023, Plaintiff's counsel filed an amended complaint, alleging claims pursuant to Title VII, 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 633a, for discrimination based on race, national origin, gender, and age, retaliation, and hostile work environment during the course of her employment with the TSA[4] at Newark Liberty International Airport. (FAC ¶¶ 76–117). On March 18, 2024, after Defendant filed a motion to

---

[4] When Plaintiff initially filed this case, she listed one defendant on the civil cover sheet: Alejandro Mayorkas, Secretary of the U.S. Department of Homeland Security. (D.E. No. 1-1). In addition, the case captions for the original complaint, the First Amended Complaint, and the Second Amended Complaint include only one defendant, Mayorkas. However, the "Parties" section for each of these documents suggests that Plaintiff originally filed this action against three defendants: the TSA, the Department of Homeland Security, and Mayorkas. The docket reflects the same. With this said, on April 19, 2023, the same day Plaintiff filed her First Amended Complaint, the TSA and Department of Homeland Security were terminated from the case. No party objected to their terminations. Thus, the only active defendant is Mr. Mayorkas.

5

dismiss the First Amended Complaint (D.E. No. 24), the Honorable Leda D. Wettre, U.S.M.J., issued a Report and Recommendation recommending that the Court grant Defendant's motion and dismiss the First Amended Complaint *without prejudice* for failure to state a claim. (D.E. No. 47 ("R&R") at 16). No parties objected to Judge Wettre's R&R. On April 5, 2024, this Court adopted the R&R in full and allowed Plaintiff an opportunity to cure the deficiencies identified by Judge Wettre. (D.E. No. 54 ("April 5, 2024 Order")). On May 3, 2024, Plaintiff filed the Second Amended Complaint alleging nearly identical facts, raising the same claims, and seeking the same forms of relief. (*Compare* FAC ¶¶ 19–117, *with* SAC ¶¶ 19–117).

On May 31, 2024, Defendant moved to dismiss Plaintiff's Second Amended Complaint in its entirety. (Mot.; D.E. No. 61-1 ("Mov. Br.")). On June 17, 2024, Plaintiff opposed (D.E. 64 ("Opp. Br.")), and on July 1, 2024, Defendant filed a letter reply (D.E. 67 ("Ltr. Reply")).

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to set forth a "short and plain statement of the grounds for the court's jurisdiction," "a short and plain statement of the claim showing that a pleader is entitled to relief," and "a demand for the relief sought, which may include relief in the alternative or different types of relief." The pleading standard announced by Rule 8 does not require detailed factual allegations; it does, however, demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted). In addition, a plaintiff's short and plain statement of the claim must "give the defendants fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal citation and quotation marks omitted).

For a complaint to survive dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'" *Iqbal*, 556 U.S. 662, 678 (citing *Twombly*, 550 U.S. at 570).  A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (internal citation omitted).

In evaluating the sufficiency of a complaint, a court must accept all well-pleaded factual allegations contained in the complaint as true and draw all reasonable inferences in favor of the non-moving party.  *See Phillips v. Cnty. Of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008).  But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. 678 (quoting *Twombly*, 550 U.S. at 555).  Moreover, "[when] deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached [thereto], matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245 (internal citation omitted).

### III.    DISCUSSION

#### A.    Exhaustion

A Plaintiff must exhaust administrative remedies by filing a complaint with the EEOC before pursuing Title VII and ADEA claims.  *Spence v. Straw*, 54 F.3d 196, 200 (3d Cir. 1995); *Purtill v. Harris*, 658 F.2d 134, 138–39 (3d Cir. 1981).  "The relevant test in determining whether [plaintiff] was required to exhaust her administrative remedies . . . is whether the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the

investigation arising therefrom." *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984) (per curiam).

There is no dispute that Plaintiff properly exhausted administrative remedies for claims related to the events of 2016 and 2017, as set forth in the 2016 and 2017 EEOC Complaints.[5] The Second Amended Complaint, like the First Amended Complaint, also describes several incidents concerning Plaintiff's employment that occurred in 2014. (SAC ¶¶ 23, 27, n. 1; FAC ¶¶ 23, 27, n.1). Despite filing at least four separate EEOC complaints while employed at the TSA,[6] Plaintiff never filed a complaint related to the 2014 events. (*See generally* SAC). Nor does Plaintiff assert that the 2014 events fall within the scope of the 2016 or 2017 EEOC Complaints. (*See id.*). Having failed to exhaust administrative remedies, Plaintiff cannot now assert Title VII or ADEA claims related to the incidents from 2014.[7]

**B.  Discrimination Claims**

The Court begins its discussion of Plaintiff's discrimination claims by noting that for the discrimination claims related to the events of 2017, including Mr. O'Hanlon's change requests and long meetings, the Second Amended Complaint fails to set forth any additional facts beyond those presented in the First Amended Complaint. (*Compare* SAC ¶¶ 63-66; *with* FAC ¶¶ 63-66). In adopting Judge Wettre's R&R, this Court already dismissed discrimination claims related to the events of 2017 under Rule 12(b)(6) based on identical allegations now before the Court in Plaintiff's Second Amended Complaint. (R&R at 9 & nn.2–3; April 5, 2024 Order). Moreover,

---

[5]  *See generally* Mov. Br & Ltr. Reply.

[6]  As noted above, in addition to the 2016 and 2017 EEOC Complaints, Plaintiff filed EEOC complaints in 2010 and 2012 (SAC ¶ 22), but the Second Amended Complaint contains no information about these complaints other than that they were made. (*See generally* SAC).

[7]  Plaintiff concedes that the events of 2014 are "too sporadic" to constitute a hostile work environment but were included in the Second Amended Complaint "for background and context purposes" to demonstrate "historical allegations of disparate treatment." (SAC. n.1).

Plaintiff does not raise any additional arguments with respect to these claims in opposing Defendant's current motion to dismiss. (Opp. Br. at 1 (explaining that Plaintiff "relies on [her prior opposition brief], which contain[s] a number of arguments already in the record")). Therefore, the Court addresses only the discrimination claims related to the events of 2016, including Plaintiff's dissemination of sensitive employee information.

Title VII prohibits an employer from discriminating against an employee "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Courts review employment discrimination cases under Title VII and the ADEA using the burden-shifting framework outlined in *McDonnell Douglas Corp. v Green*, 411 U.S. 792 (1973). *See Barber v. CSX Distribution Servs.*, 68 F.3d 694, 698 (3d Cir. 1995) ("Because the prohibition against age discrimination contained in the ADEA is similar in text, tone, and purpose to the prohibition against discrimination contained in Title VII, courts routinely look to law developed under Title VII to guide an inquiry under the ADEA."). To state a prima facie case of employment discrimination, Plaintiff must show: (i) membership in a protected class; (ii) qualification for the position in question; (iii) an adverse employment action; (iv) under circumstances that give rise to an inference of unlawful discrimination. *Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 410–11 (3d Cir. 1999). At the motion to dismiss stage, "a plaintiff must plead facts that would make his case under the *McDonnell Douglas* framework plausible." *Caviness v. Aramark Corr. Servs.*, LLC, No. 14-7068, 2015 WL 1888246, at *2 (D.N.J. Apr. 15, 2015).

Plaintiff is a 55-year-old Indian woman with membership in protected classes based on race, national origin, gender, and age. (SAC ¶ 8).[8] And there is no indication that Plaintiff was

---

[8] As in the First Amended Complaint, the Second Amended Complaint contains no allegations that Plaintiff was treated differently from younger employees or disciplined due to her age. (*See generally* FAC & SAC). As such,

9

unqualified for any position she has held at the TSA. (*See generally id.*; *see also* Mov. Br.). Thus, Plaintiff satisfies the first two elements of a discrimination claim.

As to the third element, Defendant contends Plaintiff successfully pled only one adverse employment action related to the events of 2016: her three-day suspension for improperly handling sensitive employee information. (Mov. Br. at 19–22). Plaintiff argues that in addition to her three-day suspension, Defendant took other adverse employment actions after the security breach, namely, sending Plaintiff a letter of guidance, lowering Plaintiff's performance rating, and reassigning Plaintiff to a temporary customer service position.[9] (Opp. Br. at 1). In particular, Plaintiff contends that in *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024), decided after the R&R and this Court's April 5, 2024 Order, the Supreme Court expanded its view of what can constitute an adverse employment action, such that the other events from 2016 may now qualify. (*Id.* at 1–2). In deciding this motion, however, the Court need not reach this question. Indeed, regardless of whether there was just one, or as many as four, adverse employment actions, Plaintiff does not plausibly allege facts to establish that any perceived adverse employment action occurred under circumstances that give rise to an inference of discrimination.

An inference of discrimination "could be supported in a number of ways, including, but not limited to, comparator evidence, evidence of similar racial [or other protected class] discrimination of other employees, or direct evidence of discrimination from statements or actions by [] supervisors suggesting [discriminatory] animus." *Golod v. Bank of America Corp.*, 403 F. App'x 699, 702 n.2 (3d Cir. 2010). Here, Plaintiff does not allege similar treatment of other TSA

---

Plaintiff has again failed to plead a plausible claim for age discrimination under the ADEA. (R&R at 10 n.1; April 5, 2024 Order).

[9] Judge Wettre found, and this Court agreed, that these additional corrective measures did not qualify as adverse employment actions for purposes of the Title VII and ADEA discrimination claims. (R&R at 8–9; April 5, 2024 Order).

10

employees who are Indian, Asian, female or over the age of forty. (*See generally* SAC). Nor does she allege direct evidence of discrimination. (*See generally id.*). Instead, Plaintiff attempts to use comparator evidence, alleging she was the only person of color and only woman who was disciplined due to her mass dissemination of employees' personal information. (*Id.* ¶ 55).

Comparator evidence is "evidence that defendant treated 'similarly situated' individuals not within plaintiff's protected class more favorably than it treated plaintiff." *Darby v. Temple Univ.*, 216 F. Supp. 3d 535, 542 (E.D. Pa. 2016) (citing *Wilcher v. Postmaster Gen.*, 441 F.App'x 879, 881 (3d Cir. 2011)). "While 'similarly-situated' does not necessarily mean identically situated, the plaintiff must nevertheless be similar in "all relevant respects." *Mangold v. PECO Energy*, Civ. No. 19-5912, 2021 WL 6072818, at *13 (E.D. Pa. Dec. 23, 2021) (citing *Opsatnik v. Norfolk S. Corp.*, 335 F. App'x 220, 222–23 (3d Cir. 2009)). When a plaintiff relies on comparator evidence to show that she was treated differently from employees outside of her protected class, courts consider several factors to determine whether the employees are sufficiently similarly situated, including whether they: (i) had the same supervisor; (ii) were subject to the same standards; and (iii) "engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *McCullers v. Napolitano*, 427 F. App'x 190, 195 (3d Cir. 2011) (internal quotation omitted).

As in the First Amended Complaint, Plaintiff notes that the TSA did not discipline "her supervisor" as well as two distinct groups of employees: "the persons from Human Resources" who sent her the roster list and "the employees who downloaded the [non-TSA approved] apps" and could view the hidden sensitive information. (*Compare* FAC ¶ 55, *with* SAC ¶ 55). The Second Amended Complaint adds that these two groups were under the same supervisory authority as Plaintiff with respect to security issues and that they also violated the TSA policy on handling

sensitive information. (SAC ¶ 55). According to Plaintiff, the "unequal application of the aforesaid policy was discriminatory." (*Id.*).

Even with these additional allegations, the Second Amended Complaint fails to establish that either Plaintiff's supervisor or the two identified groups of employees who handled the same sensitive information without discipline were similarly situated to Plaintiff. ***First***, Plaintiff's supervisor is in a management position while she is not. (SAC ¶¶ 55, 63-75). In addition, there are no allegations that he compiled or distributed sensitive information. (*See generally id*). ***Second***, the Human Resources employees hold different jobs in a different department—this alone suggests they are not similarly situated to Plaintiff. *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 170 (3d Cir. 2013) ("[A]n employee who holds a different job in a different department is not similarly situated."). ***Third***, there are no allegations that the employees who downloaded the apps work in scheduling or operations like Plaintiff (*see generally* SAC), and Plaintiff acknowledges that her "job duties may have been different than these other persons." (*Id.* ¶ 55). The Second Amended Complaint adds that the latter two groups of employees were subject to the same security policy and under the same supervisory authority for security issues. (*Id.*). But this does not change that they were different in every other relevant aspect of employment, including, crucially, their actions under the security policy. Indeed, in addition to the differences mentioned above, Plaintiff's allegations suggest that her conduct in handling sensitive information was meaningfully different than the employees in these two groups.[10] The Human Resources employees merely sent a roster list to Plaintiff; and the employees who downloaded the apps received sensitive information but did not distribute it. (*Id.*). The Second Amended Complaint does not allege that

---

[10]   *See Greenawalt v. Clarion Cnty.*, 459 F. App'x 165, 168–9 (3d Cir. 2012) (affirming lower court's holding that plaintiff failed to make out a prima facie case of discrimination despite showing that other employees with the same job violated the same policy as plaintiff because the other employees' actions under the policy "[were not nearly as egregious as [plaintiff's] behavior.").

12

any other employee mass disseminated sensitive information akin to Plaintiff's distribution of the Excel document. (*See generally id*). Thus, Plaintiff has not alleged facts to establish that "the relevant aspects of [her] employment situation are 'nearly identical'" to the identified comparators. *Joseph v. Pepperidge Farm Inc.*, No. 22-4049, 2024 WL 921416, at *4 (E.D. Pa. Mar. 4, 2024).

Simply put, Plaintiff once again "has pleaded no more than that she was the only person disciplined for her own conduct and she is a member of protected classes." (R&R at 10). She maintains that her dissemination of employees' personal information was inadvertent, and that if she had not felt rushed, she would have realized she needed to delete the sensitive information before sending the email. (SAC ¶ 48). But this suggests only that her suspension could be viewed as unfair, not discriminatory. As the R&R acknowledges, Plaintiff need not establish a prima facie case at this stage of the proceedings; however, she must plead some facts from which the Court could infer she was disciplined because of her race, national origin, gender, or age. Plaintiff has failed to do so. Accordingly, the Court DISMISSES the discrimination claims *with prejudice*.[11]

### C. Retaliation Claims

Plaintiff's "retaliation claim may survive [a] motion to dismiss if she pleads sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence of the following elements: (1) she engaged in conduct protected by Title VII; (2) the employer took adverse action against her; and (3) a causal link exists between her protected conduct and the employer's adverse action." *Connelly, 809 F.3d at 789. See Horvath v. Rimtec Corp.*, 102 F. Supp. 2d 219, 234 (D.N.J. 2000) ("The standards for establishing a retaliation claim under Title VII and the ADEA are the essentially the same.").

---

[11] *Rhett v. Hudson Cnty. Child Support Unit*, No. 17-5539, 2020 WL 6375618, at *1 (D.N.J. Oct. 30, 2020) (explaining that "because the Court had already given Plaintiff an opportunity to amend the complaint, the Court dismissed the claims with prejudice and closed this case").

13

As in her initial opposition brief, Plaintiff fails to address Defendant's motion to dismiss the Title VII and ADEA retaliation claims in any way. (*See generally* Opp. Br.; R&R at 12). Plaintiff apparently having abandoned her retaliation claims a second time, they may be dismissed on this basis alone. *See Griglak v. CTX Mortg. Co., LLC*, No. 09-5247, 2010 WL 1424023, at *3 (D.N.J. Apr. 8, 2010) ("The failure to respond to a substantive argument to dismiss a count, when a party otherwise files opposition, results in a waiver of that count.").

In addition, as with the discrimination claims related to the events from 2017, the Court notes that for Plaintiff's retaliation claims, the Second Amended Complaint does not allege any additional facts beyond those contained in the First Amended Complaint. (*Compare* SAC ¶¶ 63-75, *with* FAC ¶¶ 63-75). Judge Wettre already determined these identical allegations fail to raise a reasonable expectation that discovery would reveal evidence of a causal link between protected activity and any alleged adverse employment actions in 2016 and 2017. Therefore, the Court **DISMISSES** the retaliation claims *with prejudice*.

### D. Hostile Work Environment Claims

"To succeed on a hostile work environment claim, the plaintiff must establish that 1) the employee suffered intentional discrimination because of his/her [protected class], 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of respondeat superior liability." *Mandel*, 706 F.3d at 167. *See Slater v. Susquehanna Cty.*, 465 F. App'x 132, 138 (3d Cir. 2012) (applying same standard to ADEA and Title VII hostile work environment claims). "When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is

violated." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quotations omitted). Courts "determine whether an environment is sufficiently hostile or abusive by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998) (quotations omitted).

As in the Amended Complaint, Plaintiff explicitly disclaims reliance on any events prior to 2016 in support of her hostile work environment claims.[12] In terms of the allegations relating to the events of 2016 and 2017, the Second Amended Complaint does not contain any additional facts beyond what was alleged in the Amended Complaint. Based on these verbatim pleadings, Judge Wettre found, and this Court agreed, that Plaintiff's allegations "amount to, at best, a few isolated incidents" where Plaintiff "felt she was treated unfairly" and that "[t]hese incidents are neither severe nor pervasive and cannot plausibly be read as creating an abusive working environment." (R&R at 16). Accordingly, the Court dismisses Plaintiff's hostile work environment claims *with prejudice*.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's motion to dismiss the Second Amended Complaint in its entirety. Accordingly, the Second Amended Complaint is **DISMISSED** *with prejudice*. An appropriate Order follows.

Dated: March 7, 2025                                             *s/ Esther Salas*
                                                                 **Esther Salas, U.S.D.J.**

---

[12] As noted above, the Second Amended Complaint states that these incidents "are too sporadic to be included in the Hostile Work Environment claim that is the subject of this case." (SAC at 4, n.1).